## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
_____
                                        )
WORLDNETDAILY.COM, INC.,                )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )      Civil Action No. 15-0549 (ABJ)
                                        )
U.S. DEPARTMENT OF JUSTICE,             )
                                        )
            Defendant.                  )
_____)
```

## <u>MEMORANDUM OPINION</u>

Plaintiff Worldnetdaily.com, Inc. brought this action against defendant, the United States Department of Justice, under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, seeking all the "materials used in the investigation by the Washington, D.C. Metropolitan Police Department, and reviewed by the U.S. Attorney's Office for the District of Columbia, into the October[] 3, 2013 fatal shooting of Miriam Carey by uniformed agents of the U.S. Secret Service and officers of the U.S. Capitol Police Department," along with "the final report and findings of that investigation." Compl. [Dkt. # 1] ¶ 5. After conducting a search and locating responsive records, defendant produced a number of records to plaintiff, some of which were produced in redacted form. Def.'s Mot. for Summ. J. [Dkt. # 18] ("Def.'s Mot."); Mem. in Supp. of Def.'s Mot. [Dkt. # 18-2] ("Def.'s Mem.") at 1. Defendant also withheld several documents in full, and it now moves for summary judgment. Def.'s Mot.; Def.'s Mem. at 1.

In a FOIA case, the district court reviews the agency's action de novo and "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B); *accord Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). "FOIA cases are typically and appropriately decided on motions for summary judgment." *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009). On a

motion for summary judgment, a court "must view the evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in his favor, and eschew making credibility determinations or weighing the evidence." *Montgomery v. Chao*, 546 F.3d 703, 706 (D.C. Cir. 2008); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). But where a plaintiff has not provided evidence that an agency acted in bad faith, "a court may award summary judgment solely on the basis of information provided by the agency in declarations." *Moore*, 601 F. Supp. 2d at 12.

Defendant produced a number of records to plaintiff, but it withheld the following documents in full:

> [A] 96-page Memorandum written by the investigative Assistant United States Attorneys to their superiors recommending against prosecution (the "[D]eclination Memo" or the "Memo"), 30 videos and audios of interviews of civilian and law enforcement witnesses, and 27 high resolution aerial photos of the White House complex taken from a restricted airspace.

Def.'s Mem. at 1. In its opposition to defendant's motion for summary judgment, plaintiff states that it is "satisfied with [] [d]efendant's efforts to identify responsive records and does not challenge the adequacy of its search for requested records." Pl.'s Mem. of Law in Opp. to Def.'s Mot. [Dkt. # 19] ("Pl.'s Opp.") at 1. Plaintiff also represents that it does not challenge the withholding of the 27 aerial photographs or the 30 video and audio records as exempt from FOIA. *Id.*

Thus, the only issue before the Court is whether defendant properly withheld the Declination Memo as subject to "the attorney work-product and deliberative process privileges include[ed] in FOIA's Exemption (b)(5)." Def.'s Mem. at 1. Defendant explains that it withheld that document because it is "an intra-agency communication created as part of the decision-making process regarding whether or not to prosecute the federal officers" involved in the Carey shooting,

2

which "describes the federal prosecutors' views of the criminal investigation and contains their legal reasoning, analysis of the evidence, and their recommendations to their superiors not to pursue charges." *Id.* Plaintiff maintains that the Declination Memo "is not a pre-decisional document or deliberative communication," but "[r]ather, it is the final determination to decline prosecution and is not exempt from disclosure under FOIA." Pl.'s Opp. at 2.

To assist it in resolving the issue of whether the document in question is subject to the deliberative process privilege, the Court ordered defendant to produce the Declination Memo to the Court for *in camera* review. Min. Order (Sept. 14, 2016). Upon review of the document, the Court concludes that it is unambiguously predecisional and deliberative in nature. Therefore, it is protected by the deliberative process privilege, and defendant's motion for summary judgment will be granted.

The deliberative process privilege protects from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery," and its purpose "is to enhance 'the quality of agency decisions' by protecting open and frank discussion among those who make them within the [g]overnment." *U.S. Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001), quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975). Thus, the privilege only "protects agency documents that are both predecisional and deliberative." *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006); *accord McKinley v. Bd. of Governors of Fed. Reserve Sys.*, 647 F.3d 331, 339 (D.C. Cir. 2011). "[A] document [is] predecisional if 'it was generated before the adoption of an agency policy' and deliberative if 'it reflects the give-and-take of the consultative process.'"

3

*Judicial Watch*, 449 F.3d at 151, quoting *Coastal States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

Upon consideration of the parties' pleadings and the Declination Memo itself, the Court finds that the document was properly withheld as subject to the deliberative process privilege.[1] The Court's *in camera* review of the Declination Memo confirmed that it satisfies both prongs of the deliberative process privilege because it is both predecisional and deliberative.   The memorandum conveys the recommendation of two Assistant United States Attorneys ("AUSAs") to their supervisors within the U.S. Attorney's Office that the U.S. Attorney for the District of Columbia should decline to prosecute the officers involved in the Carey shooting, and it lays out the evidence and analysis upon which that recommendation is based.   Such documents have routinely been found to be exempt from disclosure under FOIA.   *See, e.g.*, *Paisley v. CIA*, 712 F.2d 686, 699 (D.C. Cir. 1983) (observing that "the information-gathering and deliberative process that produces" "a decision as to whether or not to prosecute someone" "is precisely the type of material to be protected as pre-decisional under Exemption 5"), opinion vacated in part on other grounds, 724 F.2d 201 (D.C. Cir. 1984); *Heggestad v. U.S. Dep't of Justice*, 182 F. Supp. 2d 1, 10 (D.D.C. 2000) ("[A]ll documents prepared by the agency with regard to this prosecution prior to the final decision . . . to authorize the prosecution . . . would be considered predecisional and allowing release of these memoranda would violate the intent of the deliberative process privilege.").

---

1        Defendant also maintains that the Declination Memo is protected from disclosure because it is subject to the attorney work-product privilege.  Def.'s Mem. at 1.  But because the Court finds that the deliberative process privilege applies to the Declination Memo, it need not reach this argument.

Plaintiff insists that the Declination Memo is itself a final decision, and is not predecisional, because it "was written by the AUSAs who were investigating the shooting and made the determination to decline to prosecute." Pl.'s Opp. at 8. But the Court's review of the document reveals that plaintiff is incorrect: the Declination Memo does not reflect a *determination* to decline to prosecute, but a *recommendation* that the United States Attorney decline to do so, along with the evidence and analysis supporting that recommendation. In other words, the Declination Memo does not, as plaintiff insists, "embod[y] the final decision to decline to prosecute," *id.* at 7–8, nor does it "follow[] the decision," *id.* at 8. Rather, it contains the recommendation of the investigating AUSAs as to what final decision should be reached by their supervisors in the future. The recipients of the Declination Memo could have agreed, disagreed, or called for further investigation or analysis.

The factual record also demonstrates why plaintiff's position – that "[t]he Declination Memo here follows the decision and is simply the communication designed to explain it," *id.* – is incorrect. The Declination Memo was written on May 22, 2014, and it was not until July 10, 2014, nearly two months later, that the United States Attorney issued a letter formally declining to prosecute the officers. *See* Def.'s Mem. at 13; *see also* Ex. 1 to Def.'s Reply Mem. in Supp. of Def.'s Mot. [Dkt. # 20-1] (Def.'s Reply) (July 10, 2014 letter from Ronald C. Machen Jr., United States Attorney, to Assistant Director of the Secret Service and United States Capitol Police Chief reflecting decision "to decline criminal prosecution of the officers involved" in the Carey shooting). So, the Declination Memo is plainly predecisional because it preceded the final decision in the Carey matter.

Plaintiff also insists that "disclosure of the Declination Memo would not defeat any candor in future decision making processes" because plaintiff is not seeking "back and forth

communications between the AUSAs and the task force that may encompass such candor and frank discussions of reasons and rationales" for proceeding or declining to prosecute.  Pl.'s Opp. at 10. But that is precisely what the Declination Memo contains: the investigating AUSAs' frank assessment of the witnesses, the physical evidence, and the applicable law, as well as their ultimate recommendation as to the appropriate course of action.  Disclosure of that analysis could "actually inhibit candor in the decision-making process if made available to the public."  *Army Times Pub. Co. v. Dep't of the Air Force*, 998 F.2d 1067, 1072 (D.C. Cir. 1993).

Finally, plaintiff complains that defendant has "ma[de] no attempt to identify or segregate any factual or non-exempt portions of the document."  Pl.'s Opp. at 6.  But the Court's review of the Declination Memo has persuaded it that no portion of the document can be reasonably segregated or released with redactions.

For those reasons, in consideration of the parties' pleadings and the relevant record, the Court concludes that the Declination Memo is both predecisional and deliberative, and that it is protected from disclosure by the deliberative process privilege.  Defendant is therefore entitled to summary judgment, and its motion will be granted.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  October 19, 2016